## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WOLVERINE TUBE, INC, et al.,[1] | ) Case No. 10-13522 (PJW) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) **RE: D.I. 7** |

### INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 552 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion, dated November 1, 2010 (the "Motion") [D.I. 7)],[2] of Wolverine Tube,

Inc. and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the

"Debtors") in the above-captioned cases (the "Chapter 11 Cases"), for interim and final orders

under sections 105, 361, 362, 363(c), 363(m), and 552 of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

(I) authorization for the Debtors pursuant to sections 105, 361, 362,

363, and 552 of the Bankruptcy Code to (a) use the Cash Collateral (as defined in

paragraph 4(e) below), and all other Prepetition Collateral (as defined in

paragraph 4(d) below); and (b) provide adequate protection to the beneficial

holders ("Senior Secured Noteholders") of the 15% Senior Secured Notes due

2012 ("Senior Secured Notes") under that certain Indenture dated as of April 28,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Wolverine Tube, Inc. (0812), Tube Forming, L.P. (3323), Wolverine Joining Technologies, LLC (1600), WT Holding Company, Inc. (4984) and TF Investor Inc. (8048). The Debtors' corporate headquarters and the mailing address for each Debtor is 200 Clinton Avenue West, 10th Floor, Huntsville, Alabama 35801.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Motion or Indenture, as applicable.

2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Senior Indenture"), among the Debtors and U.S. Bank National Association, as indenture trustee and collateral agent (the "Senior Indenture Trustee" and collectively with the Senior Secured Noteholders, the "Adequate Protection Parties");

(II)     subject to entry of the Final Order (other than with respect to claims arising under section 549 of the Bankruptcy Code), authorization to grant adequate protection liens on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), as identified pursuant to Rule 4001-2(D) of the Delaware Bankruptcy Local Rules (the "Local Rules");

(III)     subject to entry of the Final Order, and except to the extent of the Carve Out (as defined below), the waiver by the Debtors of any right to surcharge against the Collateral (as defined in paragraph 8 below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law, as identified pursuant to Local Rule 4001-2(C);

(IV)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this proposed interim order (the "Interim Order") authorizing the Debtors to use the Cash Collateral; and (b) granting adequate protection to the Adequate Protections Parties; and

2

(V)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Debtors on a final basis to continue to use the Cash Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The Interim Hearing having been held by this Court on November [X], 2010; and upon the record made by the Debtors at the Interim Hearing; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction.* This Court has core jurisdiction over the Chapter 11 Cases commenced on November 1, 2010 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Committee Formation.* A statutory committee of unsecured creditors has not yet been appointed in the Chapter 11 Cases.

3.    *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on the thirty (30) largest (on a consolidated basis) unsecured creditors of the Debtors, counsel to the *ad hoc* group of the Debtors' Senior Secured Noteholders (the "Ad Hoc Noteholder Group"), [counsel to] the Senior Indenture Trustee, all secured creditors of record, the Securities and

Exchange Commission, counsel to Plainfield Asset Management LLC ("Plainfield"), the United States Trustee for the District of Delaware, and the Internal Revenue Service. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and of the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d).

4. *Debtors' Stipulations.* Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 16 and 17 below) the Debtors admit, stipulate, and agree that:

(a) as of the Petition Date, the Debtors were party to or otherwise obligated under the Senior Indenture and the Senior Note Documents (as defined below) without defense, counterclaim or offset of any kind, and were indebted and liable to the Senior Secured Noteholders in the aggregate principal amount of not less than approximately $131 million in respect of the Senior Secured Notes issued under the Senior Indenture, exclusive of accrued and unpaid interest (including any default interest), premium, if any, and certain fees, costs, indemnities, expenses (including fees and expenses of professionals reimbursable under the Senior Indenture), charges and all other Notes Obligations (as defined in the Senior Indenture) incurred in connection therewith pursuant to the Senior Indenture (collectively, the "Senior Secured Obligations"), which Senior Secured Obligations are secured by first priority liens on and security interests in substantially all of the Debtors' assets (the Prepetition Collateral, as defined below in paragraph 4(d)) as more specifically described in the Prepetition Collateral Documents (as defined below).

(b) The Senior Secured Obligations constitute legal, valid and binding obligations of the Debtors as set forth in the Senior Indenture, the Prepetition Collateral

4

Documents and each other agreement or document entered into in connection with the Senior Indenture (collectively, the "Senior Note Documents"). Each Senior Note Document is enforceable in accordance with its terms (except to the extent prohibited under the Bankruptcy Code) by the Senior Indenture Trustee and the Senior Secured Noteholders against each of the Debtors.

(c)     (i) no portion of the Senior Secured Obligations is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights related to the Senior Secured Obligations, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Adequate Protections Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors;

(d)     the liens and security interests granted to the Senior Indenture Trustee in the Prepetition Collateral (collectively, the "Prepetition Security Interests") in connection with the Senior Note Documents, including, without limitation, the Guarantee and Collateral Agreement (dated as of April 28, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Guaranty and Collateral Agreement"), all other security agreements, pledge agreements, mortgages, deeds of trust and security documents executed by any of the Debtors or any non-debtor subsidiary of a Debtors in favor of the Senior Indenture Trustee or the Senior Secured Noteholders (collectively, the "Prepetition Collateral Documents"), for the benefit of the Secured Parties (as defined in the Guarantee and Collateral

5

Agreement), are valid, binding, perfected, enforceable, first priority liens and security interests, subject to permitted exceptions under the Senior Indenture, on the personal and real property constituting "Collateral" under, and as defined in, the Senior Indenture (together with the Cash Collateral, the "Prepetition Collateral") and are (i) not subject to avoidance, recharacterization, reclassification or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (ii) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve Out (as defined in paragraph 8 below), (B) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph 7 below), and (C) valid, perfected and unavoidable liens and security interests otherwise permitted under the terms of the applicable Senior Note Documents, but only to the extent that such liens and security interests are permitted by the applicable Senior Note Documents to be senior to the applicable Prepetition Security Interests. The Debtors each irrevocably waive, for themselves, and their subsidiaries and affiliates, any right to challenge or contest in any way the Prepetition Security Interests or the validity or enforceability of the Senior Secured Obligations and the Senior Note Documents; and

(e)     the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral constitute proceeds of the Prepetition Collateral and, therefore, shall be deemed cash collateral of the Senior Indenture Trustee, for the benefit of the Senior Secured Noteholders, within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (the "Cash Collateral"), and the Debtors agree that such amount includes cash in an aggregate amount not less than $1.9 million as of October 29, 2010.

6

5.  *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The terms of the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(c)     The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Senior Indenture Trustee, Plainfield and the Ad Hoc Noteholder Group, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, Senior Indenture Trustee, Plainfield and the Ad Hoc Noteholder Group are hereby found to have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided to such entities under section 363(m) of the Bankruptcy Code.

(d)     The Supporting Noteholders (as defined below) have consented to, and have directed the Senior Indenture Trustee to consent to, conditioned on the entry of this Interim Order, the Debtors' use of Prepetition Collateral, including Cash Collateral.

(e)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order is in the best interest of the Debtors' estates.

6.  *Authorization of Use of Cash Collateral and Prepetition Collateral.*

(a)     The Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date only for (i) working

capital, general corporate purposes and administrative costs and expenses of the Debtors in the ordinary course of business and, in each case, subject to the Approved Budget (as defined below) and the terms hereof; and (ii) adequate protection payments to the Adequate Protection Parties, as contemplated herein.

(b)    The Debtors shall only use the Cash Collateral pursuant to a thirteen-week budget in form and substance reasonably acceptable to the Requisite Supporting Noteholders (a streamlined version of the current version of the Approved Budget (which has been previously approved by the Requisite Supporting Noteholders (as defined below)) is attached hereto as Exhibit A) setting forth projected cash disbursements and receipts on a line item and weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Approved Budget and starting on the Petition Date (any such budget together with all updates and supplements thereto that are in form and substance acceptable to the Requisite Supporting Noteholders being referred to herein as the "Approved Budget"). No later than ten (10) business days prior to the end of each four (4) week period beginning with the four (4) week period ending November 28, 2010, the Debtors shall submit for the Ad Hoc Noteholder Group's and Plainfield's review and approval a supplemental budget for the subsequent thirteen (13) week period commencing on the first Monday following the expiration of the current Approved Budget, which supplemental budget shall be in form and substance reasonably acceptable to the Requisite Supporting Noteholders and, upon approval thereof by the Requisite Supporting Noteholders, shall constitute the "Approved Budget". On a weekly basis, starting with the week ending November 21, 2010 and for every week thereafter, on a cumulative basis from the Petition Date to such date of determination, (i) the aggregate actual operational disbursements for such period must be no greater than 115% of the aggregate projected

8

operational disbursements (excluding variances caused by copper prices above $3.75 per pound) for such period specified in the Approved Budget for the week ending November 21, 2010, and no greater than 110% of the aggregate projected operational disbursements (excluding variances caused by copper prices above $3.75 per pound) for such period specified in the Approved Budget for every week thereafter, and (ii) the aggregate actual cash receipts collected by the Debtors shall not be less than 85% of the aggregate amount of projected cash receipts for such period specified in the Approved Budget for the week ending November 21, 2010, and not less than 90% of the aggregate amount of projected cash receipts for such period specified in the Approved Budget for every week thereafter, as set forth in the Approved Budget. On a monthly basis, starting with the month ending December 31, 2010 and for every month thereafter, on a cumulative basis from the Petition Date to such date of determination, the aggregate actual chapter 11 related disbursements (other than fees and expenses related to the professionals for the Ad Hoc Noteholder Group) for such period must be no greater than 105% of the aggregate projected chapter 11 related disbursements (other than fees and expenses related to the professionals for the Ad Hoc Noteholder Group) for such period. The Debtors shall provide to counsel for the Ad Hoc Noteholder Group and Plainfield, so as actually to be received on or before Thursday by 12:00 noon (Eastern time) of each calendar week, weekly variance reports (the "Variance Reports") for the period ending the preceding weekly period and on a cumulative basis from the Petition Date to the last day of such preceding weekly period, which variance reports shall be in form and substance reasonably acceptable to the Requisite Supporting Noteholders, comparing actual cumulative operational cash disbursements and cumulative cash receipts to such cumulative amounts projected in the Approved Budget for such period. For purposes of this Interim Order, "Requisite Supporting Noteholders" shall mean those Senior

Secured Noteholders that are a party to or become a party to (each a "Supporting Noteholder") that certain Plan Support Agreement dated as of October 31, 2010 (the "Plan Support Agreement"): (i) owning more than 66 2/3% in aggregate principal amount of the Senior Secured Notes held by all Supporting Noteholders and (ii) constituting more than ½ in number of all Supporting Noteholders. For purposes of determining whether clause (ii) in the prior sentence has been satisfied, a Supporting Noteholder and each of its affiliated Supporting Noteholders shall constitute a single Supporting Noteholder.

(c)     Nothing in this Interim Order shall constitute a cap on the professional fees allowed in these Chapter 11 Cases.

(d)     Except as expressly set forth herein, this Interim Order does not address or otherwise permit or authorize the Debtors to use, sell, lease or otherwise dispose of any Prepetition Collateral outside the ordinary course of business or the Debtors' use of the Cash Collateral resulting therefrom without further order of the Court.

7.     *Entitlement to Adequate Protection.*

The Adequate Protection Parties are entitled, pursuant to sections 361, 363(c)(2) and 552 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the Carve Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, if any, the "Adequate Protection Obligations").

8. *Adequate Protection Claims and Liens.*

As adequate protection, the Adequate Protection Parties are hereby granted the following claims, liens, rights and benefits:

(a)     <u>Section 507(b) Claim</u>. The Adequate Protection Obligations due to the Adequate Protection Parties shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Debtors' Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code (the "<u>507(b) Claim</u>"), subject and subordinate only to the Carve Out.

(b)     <u>Adequate Protection Liens</u>. As security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Senior Indenture Trustee of any Collateral, the following security interests and liens are hereby granted to the Senior Indenture Trustee, for its own benefit and the benefit of the Adequate Protection Parties (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "<u>Collateral</u>"), subject only to the Carve Out (all such liens and security interests granted to the Senior Indenture Trustee, for its benefit and for the benefit of the Secured Parties pursuant to this Interim Order, the "<u>Adequate Protection Liens</u>"):

11

(i) <u>First Priority On Unencumbered Property</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including, without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, investment property, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the directly owned subsidiaries of the Debtors and the proceeds of all of the foregoing, but not including interests in any joint ventures (but not the proceeds thereof) of the Debtors to the extent such liens are prohibited pursuant to a bona fide agreement with the applicable joint venture partner; <u>provided</u> that, except with respect to claims or causes of action arising under section 549 of the Bankruptcy Code, the Unencumbered Property shall not include the Avoidance Actions, but subject to the entry of the Final Order, the Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(ii) <u>Liens Junior To Certain Existing Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including, without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, but not including interests in any joint ventures (but not the proceeds thereof) of the Debtors to the extent such liens are prohibited pursuant to a bona fide agreement with the applicable joint venture partner, whether now existing or hereafter acquired, that is subject to (x) valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Senior Indenture Trustee.

(iii) <u>Liens Senior to Certain Existing Liens</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including, without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired, but not including interests in any joint ventures (but not the proceeds thereof) of the Debtors to the extent such liens are prohibited pursuant to a bona fide agreement with the applicable joint

13

venture partner; provided that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Senior Indenture Trustee or (y) valid and unavoidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Senior Indenture Trustee;

(iv)    No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Adequate Protection Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under sections 363 or 364 of the Bankruptcy Code or otherwise.

(c)    Carve Out. For purposes hereof, the "Carve Out" shall mean (i) the statutory fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee for the District of Delaware under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) the fees and expenses up to $25,000 incurred by a trustee of the Debtors under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below), and (iii) following receipt of notice from the Requisite Supporting Noteholders after the occurrence and during the continuance of a Termination Event hereunder (the "Carve Out Trigger Notice"),

14

accrued and unpaid professional fees and expenses that were incurred by the Debtors and any statutory committee appointed in the Debtors' Chapter 11 Cases (or, if only a single statutory committee is appointed in the Chapter 11 Cases, the "Committee") prior to the delivery of the Carve Out Trigger Notice in accordance with the Approved Budget and allowed at any time by the Court pursuant to sections 328, 330 and 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") plus an aggregate amount of such professional fees and expenses incurred by the Debtors and the Committee after the delivery of the Carve Out Trigger Notice under sections 328, 330 and 331 of the bankruptcy Code not exceeding $500,000 (excluding any Allowed Professional Fees and any retainers held by any estate professional as of the date of delivery of the Carve Out Trigger Notice, the "Carve Out Cap") with $400,000 of such Carve Out Cap being allocated to the fees and expenses incurred by the professionals of the Debtors and $100,000 of such Carve Out Cap being allocated to the fees and expenses incurred by the professionals of the Committee; provided that (w) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Senior Indenture Trustee or any Senior Secured Noteholder, it being understood that, subject to paragraph 17 below, the Carve Out may be available to cover investigation and diligence professional fees and expenses for the Committee, (x) the Carve Out Cap shall not be reduced by the payment of the Allowed Professional Fees (whether before or after the delivery of the Carve Out Trigger Notice), (y) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates, and (z) all amounts of professional fees and expenses incurred after delivery of the Carve Out Trigger Notice shall be first applied against any retainer, if any, held by such estate professional. For the

15

purposes of the foregoing, the Carve Out Trigger Notice shall be a written notice delivered by the Requisite Supporting Noteholders to the Debtors and their counsel, the Senior Indenture Trustee, the United States Trustee for the District of Delaware and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of any Termination Event, stating that the Carve Out Cap has been invoked. Notwithstanding anything herein to the contrary, the Carve Out shall not apply to any Collateral proceeds paid to the Adequate Protection Parties pursuant to this or any other order and all proceeds of the Collateral shall be paid to the Senior Indenture Trustee free and clear of the Carve Out.

(d)     Fees and Expenses. The Debtors are authorized and directed to pay within ten (10) days of presentment of an invoice (subject to applicable privileges) the reasonable fees, costs and expenses incurred or accrued by (x) the Senior Indenture Trustee including, without limitation, the reasonable fees and expenses of [legal counsel (including local counsel)], (y) the Ad Hoc Noteholder Group, including, without limitation, the reasonable fees and expenses of their counsel, Sidley Austin LLP, any local counsel and other professionals hired by or on behalf of the Ad Hoc Noteholder Group; provided, that the Ad Hoc Group provides the Debtors with reasonable advance notice of any other professionals to be hired by the Ad Hoc Noteholder Group and (z) in accordance with the Plan Support Agreement or in the event the Plan Support Agreement is terminated (other than because of the Effective Date of a Conforming Plan), Plainfield (solely in its capacity as a Senior Secured Noteholder), including without limitation, the reasonable fees and expenses of their counsel, Kramer Levin Naftalis & Frankel LLP and any local counsel hired by Plainfield. None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no

16

recipient of any such payment shall be required to file any interim or final fee application with respect thereto. For the avoidance of doubt, the Debtors' payment of the above-listed fees and expenses is in the nature of adequate protection and shall be without regard to any limitations or conditions set forth in any prepetition agreements by and between the Debtors and the Senior Indenture Trustee, any noteholder and any such professional.

(e)     Financial Reporting. The Debtors shall deliver to the Senior Indenture Trustee the Monthly Operating Reports filed with the Bankruptcy Court and any other reporting requirements provided in this Interim Order (with simultaneous copies to counsel to the Ad Hoc Noteholder Group, Plainfield and the Committee) together with such additional information as the Ad Hoc Noteholder Group or Plainfield may reasonably request from time to time.

(f)     Other Covenants. The Debtors shall maintain their cash management arrangement in a manner reasonably acceptable to the Requisite Supporting Noteholders. The Debtors (i) shall not use, sell or lease any assets outside the ordinary course of business without the prior consent of the Requisite Supporting Noteholders or the approval of the bankruptcy court after notice and a hearing; and (ii) shall provide advance notice as soon as reasonably practicable to counsel for the Ad Hoc Noteholder Group and Plainfield of any motion to use, sell or lease any assets outside the ordinary course of business with the consent of the Requisite Supporting Noteholders.

(g)     Accrual of Interest. Interest at the non-default rate under the Senior Indenture shall accrue but not be payable after the Petition Date until the Termination Date subject to section 506(b) of the Bankruptcy Code. The Senior Indenture Trustee and Senior Secured Noteholders reserve the right to seek the accrual and payment of interest at the contract rate, including any applicable default rate, under the Senior Indenture.

17

(h)  <u>Weekly Meetings</u>: Members of the Debtors' senior management shall be available to meet on a bi-weekly basis with the Senior Indenture Trustee, Plainfield and the Ad Hoc Noteholder Group, either in person or via telephone conference (at the Debtors' option), to discuss the Debtors' business operations, significant events in the bankruptcy proceedings and the Variance Reports, if requested by the Senior Indenture Trustee, Plainfield or the Ad Hoc Noteholder Group upon reasonable advance notice.

(i)  <u>Debtor-in-Possession Financing</u>: If the Debtors intend to seek any debtor-in-possession financing under section 364 of the Bankruptcy Code, the Debtors shall (i) first provide the Supporting Noteholders with the right to provide such debtor-in-possession financing, and (ii) if seeking to prime the liens of the Senior Indenture Trustee and/or the Senior Secured Noteholders, receive the consent of the Requisite Supporting Noteholders or provide adequate protection to the Senior Secured Noteholders in accordance with the Bankruptcy Code; <u>provided</u>, <u>however</u>, that this Interim Order shall not be determinative of what constitutes adequate protection of such parties' interests under such circumstances.

9.  *Termination of Debtor's Right to Use Cash Collateral.* The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding on the earliest to occur of (i) one hundred and fifty (150) days (or such later date if the Requisite Supporting Noteholders provides written consent, which extension thereof shall be effective without further Court approval); (ii) thirty (30) days after the Petition Date (unless such period is extended by mutual agreement of the Requisite Supporting Noteholders and the Debtors) if the Final Order has not been entered by this Court on or before such date, and (iii) the date of delivery by the Senior Indenture Trustee to the Debtors of the Termination Declaration (as

18

defined below) indicating the occurrence of any of the events set forth below (collectively referred to herein as the "Termination Events") (unless waived, extended or otherwise modified by the written agreement of the Requisite Supporting Noteholders):

(a)     failure of the Debtors to make any payment required pursuant to this Interim Order to the Adequate Protection Parties and such failure shall continue unremedied for three (3) business days following notice by counsel to the Ad Hoc Noteholder Group or the Adequate Protection Party of such failure; provided that, with respect to this paragraph 9(a), a Termination Event shall not have occurred until the expiration of such grace period;

(b)     failure of the Debtors to comply with any provision, covenant or agreement in this Interim Order and such failure to comply shall continue unremedied for five (5) business days following notice by counsel to the Ad Hoc Noteholder Group of such failure; provided that, with respect to this paragraph 9(b), a Termination Event shall not have occurred until the expiration of such grace period;

(c)     the date upon which any provision of this Interim Order shall for any reason cease to be valid and binding, or any of the Debtors shall so assert in any pleading filed in any court;

(d)     any of the Chapter 11 Cases shall be dismissed or converted to a chapter 7 case, or a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Chapter 11 Cases;

(e)     this Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in

lieu of foreclosure or the like) on any assets of the Debtors which have an aggregate value in excess of $500,000 and such order shall not be subject to stay pending appeal;

(f)     an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the Requisite Supporting Noteholders' consent;

(g)     The Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Senior Indenture;

(h)     The Debtors pay any obligations or expenses except to the extent expressly contemplated and permitted by this Interim Order (including, without limitation, Paragraph 6(b) of this Interim Order) and the Approved Budget applicable at the time of such payment;

(i)     The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claim of the Adequate Protection Parties;

(j)     Any judgment in excess of $500,000 as to any post-petition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtors a non-monetary judgment with respect to a post-petition event which has or could reasonably be expected to have a material adverse

20

effect on the property, business, condition (financial or otherwise) of the Debtors taken as a whole or the ability of the Debtors to perform their obligations under this Interim Order;

(k)     A filing by any Debtor of any motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Senior Secured Obligations or any other cause of action against and/or with respect to the Senior Secured Obligations, the prepetition liens securing such Senior Secured Obligations, the Senior Indenture Trustee or any of the Senior Secured Noteholders (or if the Debtors join any such motion, application or adversary proceeding commenced by any third party);

(l)     Other than payments authorized by the Court, the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables (including, without limitation, reclamation claims) in excess of $25,000 in the aggregate; or

(m)     The termination of the Plan Support Agreement pursuant to its terms; or

(n)     The effective date of a plan of reorganization or a plan of liquidation in any of the Chapter 11 Cases.

The Debtors shall be required to provide prompt notice to counsel for the Ad Hoc Noteholder Group, counsel for the Senior Indenture Trustee, counsel for Plainfield, counsel for the Committee and the United States Trustee for the District of Delaware of the occurrence of any Termination Event.

10.     <u>Rights and Remedies upon Occurrence of Termination Event</u>.  Immediately upon the occurrence and during the continuation of a Termination Event, the Requisite Supporting Noteholders may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral (any such declaration, shall be referred to herein as a "Termination

Declaration"). The Termination Declaration shall be by facsimile or electronic mail delivery to counsel to the Debtors, counsel to the Committee, and the United States Trustee and thereafter, the Debtor shall be entitled to seek an emergency hearing with the Court. Unless the Court determines otherwise, the Debtors' exclusive periods to file, and solicit votes for, a chapter 11 plan of reorganization shall automatically terminate and the automatic stay shall automatically be terminated on the fifth day after the delivery of the Termination Declaration, each solely as to the Supporting Noteholders and the Senior Indenture Trustee, and the Debtor shall no longer have the right to use Cash Collateral, and the Senior Indenture Trustee and the Requisite Supporting Noteholders shall, on five days notice to counsel for the Debtors, be permitted to exercise all remedies set forth herein, in the Senior Note Documents, and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to the Senior Indenture Trustee with respect thereto pursuant to the Senior Note Documents or this Interim Order. Notwithstanding anything contained herein to the contrary, the Senior Indenture Trustee and the Requisite Supporting Noteholders may elect in their sole discretion to file a notice with the Court that relief from the automatic stay or any other remedy provided herein shall not be automatically effective or shall be effective as of a subsequent date.

11. *Limitation On Charging Expenses Against Collateral; Marshalling.* Subject to and effective upon entry of the Final Order under Bankruptcy Rule 4001, except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the

Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Requisite Supporting Noteholders and no such consent shall be implied from any other action, inaction, or acquiescence by the Ad Hoc Noteholder Group, Requisite Supporting Noteholders, the Senior Indenture Trustee or any of the Senior Secured Noteholders. The Senior Indenture Trustee shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral.

12.    *Payments Free and Clear.* Any and all payments or proceeds remitted to the Adequate Protection Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

13.    *Reservation of Rights of the Adequate Protection Parties.* Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Adequate Protection Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Adequate Protection Parties pursuant hereto is without prejudice to the right of the Adequate Protection Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Adequate Protection Parties under the Guarantee and

Collateral Agreement or the other Senior Note Documents or under equity or law, and the

Adequate Protection Parties expressly reserve all rights and remedies that the Adequate

Protection Parties now or may in the future have under the Guarantee and Collateral Agreement,

the Senior Note Documents and/or applicable law in connection with all Defaults, Events of

Default (as defined in the Senior Indenture, whether arising prior to or after the Petition Date)

and Termination Events; provided, however, that the rights of the Debtors and other parties with

respect to the any such rights and remedies are expressly preserved.  Except as expressly

provided herein (including Paragraph 19 of this Interim Order), nothing contained in this Interim

Order (including without limitation, the authorization to use any Cash Collateral) shall have the

effect of, or shall be construed as having the effect of, amending or waiving any covenant, term

or provision of the Senior Indenture or any Senior Note Document, or any rights or remedies of

the Adequate Protection Parties thereunder, including (without limitation) any right to argue that

failure to strictly comply with any such covenant, term or provision during the course of the

Chapter 11 Cases or that any use of Cash Collateral permitted or contemplated hereby constitutes

a Default or Event of Default which is not subject to cure under section 1124 of the Bankruptcy

Code or otherwise despite any consent or agreement contained herein; provided, however, that

the rights of the Debtors and other parties with respect the foregoing matters, including, without

limitation, their respective rights to contest any such arguments of the Adequate Protection

Parties are expressly preserved.

14.  *Perfection of Adequate Protection Liens.*

(a)  The Senior Indenture Trustee, on behalf of itself and the Senior Secured

Noteholders, is hereby authorized, but not required, to file or record financing statements,

intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction

in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Senior Indenture Trustee shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.  If the Senior Indenture Trustee determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings, and the automatic stay shall be lifted to allow such filings.

(b)     A certified copy of this Interim Order may, in the discretion of the Senior Indenture Trustee, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code; provided, however, that the Debtors shall reimburse the Senior Indenture Trustee or its designee for the payment of any such tax.

(c)     The Debtors shall execute and deliver to the Senior Indenture Trustee all such agreements, financing statements, instruments and other documents as the Senior Indenture Trustee may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens.

(d)     Subject to entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental

25

entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of post-petition liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Adequate Protection Parties in accordance with the terms of this Interim Order.

15. *Preservation of Rights Granted Under this Interim Order.*

(a) If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such 507(b) Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(b) If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by counsel to the Ad Hoc Noteholder Group of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the

26

Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by counsel to the Ad Hoc Noteholder Group and the Senior Indenture Trustee of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of Cash Collateral and all Adequate Protection Obligations.

(c)     Except as expressly provided in this Interim Order, the Adequate Protection Payments shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Cases or any subsequent chapter 7 case.

(d)     Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the Adequate Protection Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization other than a Conforming Plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Interim Order shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the

27

Adequate Protection Liens, the Section 507(b) Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Adequate Protection Parties granted by the provisions of this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

16. *Effect of Stipulations on Third Parties.* The stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including without limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding on all parties in interest, including, without limitation, the Committee, provided, however, that if the Committee or another party in interest duly files an adversary proceeding challenging such stipulations, admissions, releases or other provisions no later than sixty days after the Petition Date, (or such later date agreed to by the Ad Hoc Noteholder Group); then such stipulations and admissions will not be binding on such party until there is a final, non-appealable order of a court of competent jurisdiction disposing of the relief requested. If no such adversary proceeding is timely filed then, without further order of the Court; (x) the Senior Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (y) the Senior Indenture Trustee's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Senior Secured Obligations, the Senior Indenture Trustee's liens on the Prepetition Collateral and the Senior

28

Secured Noteholders shall not be subject to any other or further challenge by the Committee or any other party-in-interest, and any such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding is timely filed, the stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding. Subject to applicable law, nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

17. *Limitation on Use of Collateral.* The Debtors shall use the proceeds of the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Senior Note Documents, or the liens or claims granted under this Interim Order or the Senior Note Documents; (b) assert any Claims and Defenses or any other causes of action against the Senior Indenture Trustee and the Senior Secured Noteholders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Adequate Protection Parties hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date

29

unless such payments are (i) approved by an order of this Court and (ii) permitted hereunder, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Senior Secured Obligations or the Senior Indenture Trustee's liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Senior Indenture Trustee or any of the Senior Secured Noteholders.

18.     *Asset Sales*. The aggregate proceeds of any sale or assignment of any Collateral or Prepetition Collateral under sections 363 or 365 of the Bankruptcy Code in excess of $40 million shall be applied against the Senior Secured Obligations, pending the final allowance of the Senior Secured Obligations under section 506(b) of the Bankruptcy Code, in accordance with the terms of the Senior Indenture.

19.     *Credit Bid*. Subject to entry of the Final Order, notwithstanding anything to the contrary in the Senior Indenture or the other Senior Note Documents, the Senior Indenture Trustee, upon the direction (and only upon the direction) of the Senior Secured Noteholders holding a majority in principal amount of Senior Secured Notes, shall have the unqualified right to credit bid up to the full amount of any remaining Adequate Protection Obligations and the Senior Secured Obligations separately or together and in any combination of the two in any sale of the Collateral or Prepetition Collateral, as applicable, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code. Subject to entry of the Final Order, the Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Collateral or

Prepetition Collateral that does not include an unqualified right to credit bid up to the full amount of the Adequate Protection Obligations and/or the Senior Secured Obligations would not result in the Senior Indenture Trustee and the Senior Secured Noteholders receiving the indubitable equivalent of their claims and interests. Subject to entry of the Final Order, the rights and privileges granted in this paragraph shall survive and continue in full force and effect until the Adequate Protection Obligations and the Senior Secured Obligations have been indefeasibly paid in cash in full or satisfied in a manner otherwise agreed to by the Requisite Supporting Noteholders.

20. *Conforming Plan.* A "<u>Conforming Plan</u>" is a plan of reorganization or a plan of liquidation for the Debtors that either (i) reflects the terms contained in the Plan Term Sheet attached to the Plan Support Agreement as Exhibit "A" or (ii) reflects terms consented to in writing by the Requisite Supporting Noteholders, and in either case, the filed form and substance of which is consented to by the Requisite Supporting Noteholders. In the absence of the confirmation of a Conforming Plan and the occurrence of the effective date on or prior to a Termination Event, all Adequate Protection Obligations must be paid in full in cash upon the occurrence of a Termination Event.

21. *Waiver of Claims and Causes of Action.* Without prejudice to the rights of any other party, including the Committee (but subject to the limitations thereon in paragraphs 16 and 17 hereof), the Debtors have waived any and all claims and causes of action against the Senior Indenture Trustee and the Senior Secured Noteholders and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors related to this Interim Order or the negotiation of the terms thereof.

22. *Binding Effect; Successors and Assigns.* The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Senior Indenture Trustee, the Senior Secured Noteholders, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Senior Indenture Trustee, the Senior Secured Noteholders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Interim Order, the Senior Indenture Trustee and the Senior Secured Noteholders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23. *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

24. *Controlling.* Notwithstanding any provision in other "first day" orders entered by this Court authorizing the Debtors to make payments in respect of any prepetition obligations, the provisions in this Interim Order conditioning the payment of such amounts or limiting the amount of such payments are controlling.

25. *Final Hearing.* The Final Hearing is scheduled for Nov. 24, 2010 at 9:30 a.m., prevailing Eastern time, before this Court. The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having

32

been given notice of the Interim Hearing, and to any other party that has filed a request for

notices with this Court and to any Committee after the same has been appointed, or Committee

counsel, if the same shall have been appointed. Any party-in-interest objecting to the relief

sought at the Final Hearing shall serve and file written objections; which objections shall be

served upon (a) Cozen O'Connor, 1201 N. Market Street, Suite 1400, Wilmington, DE 19801,

Attention: Mark E. Felger, attorneys for the Debtors, (b) Sidley Austin LLP, 787 Seventh

Avenue, New York, New York 10019, Attention: James P. Seery, attorneys for the Ad Hoc

Noteholder Group, (c) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas,

New York, New York 10036, Attention: Ernest S. Wechsler, Douglas H. Mannal and Elan M.

Daniels, attorneys for Plainfield, and (d) the Office of the United States Trustee for the District

of Delaware, and shall be filed with the Clerk of the United States Bankruptcy Court, District of

Delaware, in each case to allow actual receipt by the foregoing no later than _Nov. 19_, 2010 at

~~4:00 p.m.~~ _Noon_, prevailing Eastern time.


Dated: _Nov. 2_ ,2010

_____
Honorable Peter J. Walsh
United States Bankruptcy Judge