# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WOLVERINE TUBE, INC., *et al.* [1], | ) | Case No. ▰10-13522 (PJW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **RE: D.I. 6, 88, 203** |

## ORDER (A) AUTHORIZING AND APPROVING THE SALE OF ACQUIRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

This matter is before the Court on the motion[2], dated November 8, 2010, of Wolverine Tube, Inc. and Tube Forming, L.P., (the "Debtors"), for entry of an order, pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) approving the Purchase Agreement, as such agreement may have been amended (the "Purchase Agreement"),[3] attached hereto as Exhibit A, by and between the Debtors and the Buyer pursuant to which the Buyer has offered to acquire the Acquired Assets, (b) granting the Debtor, Tube Forming, L.P. authority to sell substantially all of its operating assets as further set forth in the Purchase Agreement free and clear of liens, liabilities, claims, interests and encumbrances, (c) authorizing Wolverine Tube, Inc. to cause its non-debtor affiliate to enter

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Wolverine Tube, Inc. (0812), Tube Forming, L.P. (3323), Wolverine Joining Technologies, LLC (1600) and WT Holding Company, Inc. (4984) and TF Investor Inc. (8048). The debtors' corporate headquarters and the mailing address for each Debtor is 200 Clinton Avenue West, 10th Floor, Huntsville, Alabama 35801.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Final Purchase Agreement and the Sale Motion, and to the extent of any inconsistency, the Final Purchase Agreement shall govern.

[3] Certain portions of the schedules to Final Purchase Agreement containing confidential or proprietary information have been redacted from the attached exhibit.

into the Purchase Agreement and ancillary agreements, (d) authorizing the Debtors to assume and assign the Designated Contracts to the Buyer, and (e) granting certain related relief (the "Sale Motion"), and this Court, in furtherance of the Sale Motion, having entered an order on November 12, 2010 (the "Bid Procedures Order") approving, among other things, the proposed Bidding Procedures appended to the Bid Procedures Order, Bidding Incentives for the Buyer, notice of the Sale, and procedures for determining and fixing cure costs to be paid in respect of Designated Contracts; and the Debtors having determined, after an extensive marketing process, that the Buyer has submitted the highest and best bid for the Acquired Assets; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) the objections thereto and (iii) the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before the Court on December 21, 2010 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[4]

## Jurisdiction, Final Order and Statutory Predicates

A.     This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C.     This order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

## Notice of the Sale and Auction

D.     Actual written notice of the Sale Motion was provided to the following parties (the "Notice Parties"): (i) counsel for the Ad Hoc Noteholders' Committee and Indenture Trustee; (ii) the Pension Benefit Guaranty Corporation, (iii) counsel for any statutory committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), (iv) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (v) the Internal Revenue Service, (vi)

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Securities and Exchange Commission; (vii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (viii) the United States Department of Justice, (ix) all applicable state attorneys general and local regulatory authorities; (x) the United States Environmental Protection Agency and any other applicable federal or state environmental agency; (xi) the counterparties to each of the Designated Contracts; (xii) all other parties known to the Debtors who have or may have asserted Liens or Claims against any of the Acquired Assets; (xiii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (xiv) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.

E. The Debtors published notice of the Sale Motion, the Sale, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Sale Motion in the Wall Street Journal, national edition on November 19, 2010.

F. The Debtors' Notice of Auction and Sale Hearing (as defined in the Sale Motion) was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

G. As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, the Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Designated Contracts to the Buyer, has been provided in accordance with the Bid Procedures Order and sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction,

4

Sale Hearing, the Sale or the assumption and assignment of the Designated Contracts to the Buyer is or shall be required.

H.     The disclosures made by the Debtors concerning the Sale Motion, the Purchase Agreement, Auction, the Sale, the assumption and assignment of the Designated Contracts to the Buyer and Sale Hearing were good, complete and adequate.

I.     A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of Designated Contracts to the Buyer and any Cure Costs related thereto), has been afforded to all interested persons and entities, including the Notice Parties.

## Good Faith of Buyer

J.     The Purchase Agreement was negotiated, proposed and entered into by the Seller and the Buyer without collusion, in good faith and from arm's-length bargaining positions. The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

K.     Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

L.     The Buyer is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, inter alia: (a) except as set forth in the Bid Procedures Order, the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (b) the Buyer complied with the provisions in the

5

Bid Procedures Order; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filings by the Debtors; (e) all payments to be made by the Buyer in connection with the Sale have been disclosed; and (f) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors.

### Highest and Best Offer

M.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The auction process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed and the auction process was conducted in a noncollusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

N.     The Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

### No Fraudulent Transfer

O.     The consideration provided by the Buyer pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States,

6

any state, territory, possession or the District of Columbia. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer. Approval of the Sale Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors and other parties in interest.

P.      The Buyer is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Buyer and the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors. The Buyer is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of Buyer and the Debtors.

### Validity of Transfer

Q.      Each Debtor (i) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the Purchase Agreement, and (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby. The Debtor, Tube Forming, L.P.'s sale of the Acquired Assets has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the Sale and the Purchase Agreement and the transactions contemplated thereby.

R.      The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the

7

Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

S.     The Debtors, or their non-debtor affiliates, are the sole and lawful owners of the Acquired Assets.  Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtor, Tube Forming L.P. to the Acquired Assets free and clear of (a) all liens and encumbrances accruing or arising any time prior to the Closing Date (collectively, "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the Acquired Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims"), relating to, accruing or arising any time prior to the Closing Date, with the exception of Assumed Liabilities.

8

## Section 363(f) is Satisfied

T.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor, Tube Forming L.P. may sell the Acquired Assets free and clear of any Liens, Claims and/or other interests in the Acquired Assets.

U.     The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all Liens and Claims, other than Assumed Liabilities.  Unless otherwise expressly included in Assumed Liabilities, the Buyer shall not be responsible for any Liens or Claims, including in respect of the following:  (1) any labor or employment agreements; (2) all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between and among the Debtors, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (6) Claims or Liens arising under any Environmental Law (as defined in the

9

Purchase Agreement) with respect to the Business, Excluded Liabilities, Acquired Assets, Excluded Assets, or assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (9) any theories of successor liability.

V.     The Debtor, Tube Forming L.P. may sell the Acquired Assets free and clear of all Liens and Claims against the Debtors, their estates or any of the Acquired Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities or Permitted Liens), including the PBGC with respect to the settlement set forth in paragraph 36, are adequately protected by having their Liens or Claims, if any, in each instance against the Debtors, their estates or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force and effect that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## Cure/Adequate Protection

W.     The assumption and assignment of the Designated Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of

sound and prudent business judgment by the Debtors. The Debtors shall: (i) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Designated Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Designated Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The Debtors' promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Designated Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). The Debtors shall also cure all defaults or provide adequate assurance of prompt cure and adequate assurance of future performance with respect to any contract or other agreement to which the Debtors are a party and which are necessary for the Debtors to meet their obligations under the Transition Services Agreement as required under section 365 of the Bankruptcy Code.

X.     Any objections to the assumption and assignment of any of the Designated Contracts to the Buyer are hereby overruled. Any objections to the Cure Amounts are resolved as set forth herein. To the extent that any counterparty failed to timely object to its Cure Amount, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Designated Contracts to the Buyer.

### Compelling Circumstances for an Immediate Sale

Y.     Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii)

11

compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.

Z.     To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale.

AA.     Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale of the Acquired Assets to Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

BB.     The consummation of the Sale and the assumption and assignment of the Designated Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### A.     General Provisions

1.     The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as reflected in paragraphs 36-38 of this Order or as announced to the Court at the Sale Hearing or by stipulation or certification filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

## B.      Approval of the Purchase Agreement

3.      The Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (ii) cause their non-debtor affiliates to enter into the Purchase Agreement and ancillary agreements and cause their affiliate, Latinoamerica, to sell its right, title and interest to the Mexico Fixed Assets (as defined in paragraph 36 hereinbelow) to Tube Forming, L.P. to facilitate the sale of the Acquired Assets to the Buyer, (iii) close the Sale as contemplated in the Purchase Agreement and this Order, and (iv) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, including the assumption and assignment to the Buyer of the Designated Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any other Sale related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

13

5.     This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of Liens, Claims or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, the Acquired Assets and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer and the respective successors and assigns of each of the foregoing.

### Transfer of the Acquired Assets

6.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor, Tube Forming L.P. is authorized to acquire the Mexico Fixed Assets from Latinoamerica and to include such assets as part of the Acquired Assets transferred to the Buyer on the Closing Date and such transfer to the Buyer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest Buyer with title to the Acquired Assets and, upon the Debtors' receipt of the Purchase Price, other than Assumed Liabilities, shall be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims or interests now have against the Acquired Assets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The transfer of the Mexico Fixed Assets from Latinoamerica to Debtor, Tube Forming, L.P. shall be subject to the Liens and Claims, if any, of the PBGC, and

14

the transfer of such assets from Debtor, Tube Forming, L.P. to the Buyer shall be free and clear of all Liens, Claims or other interests with the Liens and Claims of PBGC, if any, attaching to the net cash proceeds as more fully set forth in paragraph 36 hereof. Upon the Closing, the Buyer shall take title to and possession of the Acquired Assets subject only to the Assumed Liabilities.

7. All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or its assignee at the Closing. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims or other interests in the Acquired Assets, if any, as such Liens, Claims or interests may have been recorded or may otherwise exist.

8. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Seller's interests in the Acquired Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

9. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities.

10. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Acquired Assets (other than statements or documents with respect to Permitted Liens) shall not have delivered to the

15

Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

11.     This Order is and shall be effective as a determination that, on the Closing Date, the Buyer shall be vested with title to the Acquired Assets free and clear of all Liens, Claims and other interests of any kind or nature whatsoever other than Assumed Liabilities, and that the conveyances described herein have been effected.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

### Assumption and Assignment of Contracts.

12.     The Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Buyer, effective

upon the Closing of the Sale, the Designated Contracts free and clear of all Liens, Claims and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), and (b) execute and deliver to Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Designated Contracts and Assumed Liabilities to Buyer.

13. With respect to the Designated Contracts: (a) each Designated Contract is an executory contract under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Designated Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Designated Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Designated Contract that prohibit or condition the assignment of such Designated Contract or allow the party to such Designated Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Designated Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of each Designated Contract have been satisfied; (e) the Designated Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, Buyer, notwithstanding any provision in any such Designated Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Designated Contracts after such assignment to and assumption by Buyer; and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy

17

Code, Buyer shall be fully and irrevocably vested in all right, title and interest of each Designated Contract.

14.     All defaults or other obligations of the Debtors under the Designated Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors at the Closing or as soon thereafter as practicable by payment of the Cure Amounts (as defined below).  To the extent that any counterparty to a Designated Contract did not object to its Cure Amount by the Sale Hearing, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Designated Contracts to the Buyer.

15.     The Debtors shall perform their obligations in the ordinary course of their business with respect to any contract or other agreement to which the Debtors are a party and which is necessary for the Debtors to meet their obligations under the Transition Services Agreement.  The Debtors will take any action needed to maintain their obligations with third parties  for the term of the Transition Services Agreement.

16.     Exhibit F to the Sale Motion, sent to counterparties of the Designated Contracts, reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Designated Contracts (collectively, the "Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Buyer of the Designated Contracts.

17.     Upon the Debtor, Tube Forming L.P.'s assignment of the Designated Contracts to the Buyer under the provisions of this Order and any additional orders of this Court and Debtors' payment of any Cure Amounts pursuant to Paragraph 14 hereof, no default shall

18

exist under any Designated Contract, and no counterparty to any Purchased Contract shall be permitted (a) to declare a default by the Buyer under such Designated Contract or (b) otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Designated Contract. Each non-Debtor party to a Designated Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or, against Buyer, any counterclaim, defense, setoff or any other Claim asserted or assertable against the Debtors; and (ii) imposing or charging against Buyer or its Affiliates any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Buyer of the Designated Contracts. The validity of such assumption and assignments of the Designated Contracts shall not be affected by any dispute between the Debtors and any non-Debtor party to a Designated Contract relating to such contract's respective Cure Amount.

18.     Except as provided in the Purchase Agreement or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property or their assets or estates.

19.     The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions,

or of the Debtors' and Buyer's rights to enforce every term and condition of the Designated Contracts.

## Prohibition of Actions against the Buyer

20. Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Purchase Agreement, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement, the Buyer shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between and among the Debtors, Environmental Liabilities, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing.

21. Except with respect to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired

20

Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Acquired Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, its Affiliates, its successors or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims or interests in and to the Acquired Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its Affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its Affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Buyer, its Affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, its Affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets. On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Acquired Assets (except Assumed Liabilities), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

22. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor, Tube Forming L.P. to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

21

## Other Provisions

23.     The consideration provided by the Buyer to the Debtor, Tube Forming L.P. pursuant to the Purchase Agreement for the Acquired Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

24.     The transactions contemplated by the Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

25.     The Purchase Agreement and resulting transactions constitute the highest and otherwise best offer for the Acquired Assets. Neither the Debtors nor the Buyer have engaged in any conduct which would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

26.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (ii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

WILMINGTON\123637\8

27. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Debtors and Buyer are authorized to close the Sale immediately upon entry of this Order.

28. Nothing in this Order or the Purchase Agreement approves or provides for the transfer to Buyer of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

29. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

30. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

31. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

32. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by

23

the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to Buyer; (b) interpret, implement and enforce the provisions of this Order; (c) protect Buyer against any Liens, Claims or other interest in or against the Sellers or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Designated Contracts.

33.    Any amounts payable by the Debtors under the Purchase Agreement or any of the documents delivered by the Debtors in connection with the Purchase Agreement, including, but not limited to the Bidding Incentives, shall be paid in the manner provided in the Purchase Agreement and the Bid Procedures Order, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Buyer, its successors, or assigns.

34.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern.

36.    The Purchase Agreement includes the sale of the Fixed Assets on Exhibit B hereto (the "Mexico Fixed Assets") currently owned by Latinoamerica, a non-debtor affiliate

24

of the Debtors, but all of the other Acquired Assets (except the Mexican Designated Contracts that will be assigned at Closing by Latinoamerica to the Buyer's Affiliate) are owned by Debtor, Tube Forming, L.P.. The PBGC objected to the treatment of non-debtor assets under the proposed form of Sale Order. That objection has been resolved, and such resolution is hereby approved, as follows:

(i)  The sale includes a sale of the Mexico Fixed Assets from Latinoamerica to Debtor, Tube Forming L.P. immediately prior to the Closing of the sale of the Acquired Assets to the Buyer, such that the Buyer will acquire the Mexico Fixed Assets as part of the Acquired Assets from the Debtor, Tube Forming L.P. pursuant to this Order;

(ii)  Notwithstanding any other provision of this Order or the Purchase Agreement to the contrary, the portions of this Order that approve the transfer of assets free and clear of all Liens, Claims or other interests, or that modify, enjoin, release or otherwise limit the rights of creditors of the entities that are transferring assets, apply only to the Acquired Assets transferred by Debtor, Tube Forming L.P. to the Buyer at Closing (and to be clear do not apply to the transfer of the Mexican Fixed Assets from Latinoamerica to Debtor, Tube Forming L.P.);

(iii)  The amount of the Purchase Price allocated to the Mexico Fixed Assets included in the Acquired Assets pursuant to the Purchase Agreement is $205,667.73. Such amount shall be paid by Debtor, Tube Forming L.P. to Latinoamerica at the time of the transfer. The Debtor Wolverine Tube Inc. will cause Latinoamerica to grant the PBGC a lien attaching to the proceeds received for the Mexico Fixed Assets to the same extent, validity and priority, if any, that PBGC had a lien on Latinoamerica's assets prior to the sale; and

(iv)  The PBGC and the Debtors reserve all of their respective rights with respect to the liens and claims of the PBGC under ERISA with respect to the Wolverine Tube, Inc. Retirement Plan and under the Bankruptcy Code in connection with future sales of assets by the Debtors or any non-debtor affiliates. Nothing contained in this Order or these sale proceedings shall be used by or against either party for any reason with respect to any issue in any future proceedings.

37.  Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory status or regulations that any entity would be subject to as the owner or operator of

property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes transfer to the Buyer of any licenses, permits, registrations, or other governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

38.    All amounts due and owing to (i) Carrollton-Farmers Branch Independent School District and (ii) Dallas County Tax Office for property taxes on business personal property for the 2010 tax year shall be paid from the first Sale Proceeds at closing, whenever such closing occurs. In the event that the sale does not close prior to the end of the 2010 calendar year, any tax liens arising for any taxes incurred but not yet due and payable for the 2011 tax year shall remain attached to the property securing such tax liens.

Dated: December 2, 2010

Hon. Peter J. Walsh
United States Bankruptcy Judge