# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| WOLVERINE TUBE, INC., *et al.*,[1] | ) | |
| | ) | Case No. 10-13522 (PJW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re : # 366 |

## ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION OF WOLVERINE TUBE, INC. AND ITS AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED

The *First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, As Modified*, dated April 15, 2011 (the "Plan")[2] having been filed with this Court (the "Court") by Wolverine Tube, Inc. ("WTI") and those of its affiliates that are debtors and debtors in possession in these cases (collectively, the "Debtors"); and the Court having entered, after due notice and a hearing, an order dated April 15, 2011 (the "Approval Order") [Docket No. 368], pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), (i) approving the *First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, As Modified*, dated April 15, 2011 [Docket No. 367] (the "Disclosure Statement"), (ii) approving solicitation packages and procedures for distribution thereof, (iii) approving forms of ballots and establishing voting procedures, and (iv) scheduling a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Wolverine Tube, Inc. (0812), Tube Forming, L.P. (3323), Wolverine Joining Technologies, LLC (1600), WT Holding Company, Inc. (4984) and TF Investor Inc. (8048). The Debtors' corporate headquarters and the mailing address for each Debtor is 2100 Market Street, NE, Decatur, Alabama 35601.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

hearing (the "Confirmation Hearing") and establishing notice and objection procedures in respect of confirmation of the Plan; and the Disclosure Statement having been transmitted to all holders of Claims in Classes 3 and 5 (together, the "Voting Classes") as provided for by the Approval Order; and the Plan Supplement [Docket No. 431], the Amended Plan Supplement [Docket No. 470], the Second Amended Plan Supplement [Docket No. 474] and the Third Plan Supplement [Docket No. 505] (collectively, as they may be supplemented or otherwise further amended or modified with the prior written consent of the Requisite Supporting Noteholders, the "Plan Supplement") having been filed with the Court; and the Debtors having filed the *Debtors' Memorandum of Law in Support of First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, as Modified*, dated May 31, 2011 [Docket No. 490] (the "Confirmation Memorandum"); and John Wust having filed (i) *A Common Stockholders Objection to Debtor's Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 255], and (ii) a complaint in adversary proceeding 11-52027 (to the extent such complaint constitutes an objection to the Plan) (the pleadings referenced in clauses (i) and (ii), collectively, the "Wust Objection"); and the United States Trustee having filed *The United States Trustee's Objection to the First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and Certain Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, As Modified* [Docket No. 435] (the "UST Objection"); and U.S. Bank National Association having filed the *Objection of U.S. Bank National Association to the Debtors' First Amended Joint Plan of Reorganization* [Docket No. 457] (the "U.S. Bank Objection"); and Plainfield Asset Management LLC having filed the *Objection of Plainfield Asset Management LLC to the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the*

*Bankruptcy Code* [Docket No. 487] (the "Plainfield Objection"); and the Confirmation Hearing having been held before the Court on June 10, 2011 after due notice to holders of Claims and Interests and other parties in interest in accordance with the Approval Order, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and upon all of the proceedings had before the Court, and after full consideration of: (i) the Confirmation Memorandum, (ii) the declarations filed with the Court in connection therewith, including (a) the *Declaration of Nancy T. Stuart, the Debtors' Vice President of Finance and Corporate Controller, in Support of Confirmation of the First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, As Modified,* dated June 8, 2011 [Docket No. 501] (the "Stuart Declaration"), (b) the *Declaration of Mark E. Chesen in Support of Confirmation of the Debtors' Plan of Reorganization With Respect to Valuation Matters and Satisfaction of Best Interests of Creditors Test,* dated May 31, 2011 [Docket No. 483] (the "Chesen Declaration"), and (c) the *Declaration of Jung W. Song, Esq. of Donlin, Recano & Company, Inc. With Respect to the Tabulation of Votes and Certifying the Results of Solicitation on the First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, as Modified,* dated May 31, 2011 [Docket No. 482] (the "Voting Agent Declaration"), and the testimony contained therein, (iii) the Wust Objection, (iv) the UST Objection; (v) the U.S. Bank Objection; (vi) the Plainfield Objection; and (vi) all other evidence proffered or adduced, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and the UST Objection, the U.S. Bank Objection, and the Plainfield Objection having been resolved prior to and as stated on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.  <u>Commencement and Joint Administration of the Chapter 11 Cases</u>. On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee or examiner has been appointed in the Chapter 11 Cases.

3.  <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

4.     Burden of Proof.  The Debtors have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

5.     Notice; Transmittal and Mailing of Materials.

(a)     Due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with the deadlines for voting on and filing objections to the Plan, has been given to all known holders of Claims and Interests in accordance with the procedures set forth in the Approval Order, and no other or further notice is or shall be required;

(b)     The Disclosure Statement, Plan, Ballots and Approval Order were transmitted and served in compliance with the Approval Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no further notice is or shall be required.  All procedures used to distribute the solicitation packages to the Voting Classes were fair, and conducted in accordance with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules and all other applicable rules, laws and regulations;

(c)     Adequate and sufficient notice of the Confirmation Hearing and other deadlines described in the Approval Order and the Plan have been given in compliance with the Bankruptcy Rules and the Approval Order, and no other or further notice is or shall be required; and

(d)     The filing with the Court and service of the version of the Plan attached as Exhibit A to the Disclosure Statement, the filing of the Filed Plan Modifications (as defined herein) and the disclosure of any further modifications on the record of the Confirmation Hearing, constitute due and sufficient notice of the Plan and all later modifications thereto.

6. <u>Voting</u>. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Voting Declaration, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules.

7. <u>Plan Supplement</u>. The filing of the Plan Supplement and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Approval Order, and no other or further notice is or shall be required.

8. <u>Plan Modifications (11 U.S.C. § 1127)</u>. Subsequent to solicitation, the Debtors made certain non-material modifications to the Plan, which are reflected in the *Non-Material Modifications to First Amended Joint Plan of Reorganization of Wolverine Tube, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, As Modified,* dated May 31, 2011 [Docket No. 481] (the "<u>Filed Plan Modifications</u>"). There are other non-material modifications made to reflect compromises to plan objections or other appropriate clarifications as set forth on the record of the Confirmation Hearing or as otherwise set forth in this Confirmation Order (together with the Filed Plan Modifications, the "<u>Plan Modifications</u>"), provided, however, no such Plan Modifications shall be effective without the prior consent of the Requisite Supporting Noteholders. None of the Plan Modifications made since the commencement of solicitation adversely affects the treatment of any Claim against or Interest in any of the Debtors under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these Plan Modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified shall

constitute the Plan submitted for confirmation to the Court. For the avoidance of doubt, the Debtors shall have the right, with the prior consent of the Requisite Supporting Noteholders, to alter, amend or modify the Plan or any Plan Supplement at any time prior to the Effective Date.

9. <u>Notice of Plan Modifications</u>. The filing with the Court of the Plan as modified by the Filed Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

10. <u>Deemed Acceptance of Plan as Modified</u>. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

11. <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

12. <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Expense Claims and Priority Tax Claims that need not be classified, the Plan classifies nine Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose, and such Classes do not unfairly discriminate between or among holders of Claims or Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

13. <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Section 2.1 of the Plan specifies that Class 1 (Non-Tax Priority Claims), Class 2 (Other Secured Claims), Class 4 (General Unsecured Claims), and Class 9 (Subsidiary Equity Interests) are Unimpaired by the Plan. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

14. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 2.1 of the Plan designates Class 3 (Note Claims), Class 5 (PBGC Claim), Class 6 (Old Preferred Stock), Class 7 (Old Common Stock) and Class 8 (Section 510(b) Claims) as Impaired, and Article III of the Plan specifies the treatment of all of these Classes of Claims and Interests under the Plan. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

15. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class, unless the Holder of a Claim or Interest has agreed to a less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

16. <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents and agreements set forth in the Plan Supplement and described in the Plan provide adequate and proper means for the Plan's implementation. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

17. <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. The organizational documents of the Reorganized Debtors comply with section 1123(a)(6) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

18. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Sections 5.4 and 5.5 of the Plan contain provisions with respect to the manner of appointment of the directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity

security holders and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

19. <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

20. <u>Bankruptcy Rule 3016(a)</u>. The Plan reflects the date it was filed with the Court and identifies the entities submitting it as Plan proponents. Accordingly, the Plan satisfies Bankruptcy Rule 3016(a).

21. <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors, as the proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code. Specifically, among other things:

(a)    The Debtors are proper debtors under section 109(d) of the Bankruptcy Code;

(b)    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Court; and

(c)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Approval Order in (i) transmitting the Disclosure Statement, the Plan and related documents and notices and (ii) soliciting and tabulating votes on the Plan.

22. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and records of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the

Stuart Declaration, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates and to effectuate a successful reorganization of the Debtors.

23. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

24. <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the five (5) members of the initial board of directors of Reorganized WTI beginning on the Effective Date either has been disclosed or the method of selection of those members has been disclosed in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules. Therefore, the appointment to, or continuance in, such positions of such persons is consistent with the interests of holders of Claims against, and Interests in, the Debtors and with public policy. The Debtors have further disclosed that: (a) the board of directors of each Reorganized Debtor (other than Reorganized WTI) shall be identified and selected by the board of directors of Reorganized WTI and consist of some or all of the members of the board of directors of Reorganized WTI; and (b) on the Effective Date, the officers of the respective Debtors immediately prior to the Effective Date shall serve as the officers of the Reorganized Debtors.

25. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its business approve any rate change provided for in a plan

of reorganization. The Plan does not provide for any changes in any regulated rates. Accordingly, the Plan satisfies section 1129(a)(6) of the Bankruptcy Code.

26. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Chesen Declaration, the Voting Agent Declaration, the Liquidation Analysis attached as Exhibit D to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing: (a) are persuasive and credible; (b) have not been controverted by other evidence; and (c) establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

27. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Classes 1, 2, 4 and 9 are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 3 and 5 each have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. In addition, Classes 6, 7 and 8 are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Classes 6, 7 and 8, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to each of Classes 6, 7 and 8. Accordingly, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

28. <u>Treatment of Administrative Expense, Priority Tax, and Non-Tax Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims pursuant to Section

3.2.1 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Non-Tax Priority Claims pursuant to Section 3.4 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 3.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The treatment of Secured Tax Claims pursuant to Section 3.3 of the Plan satisfies the requirements of section 1129(a)(9)(D) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

29. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 3 and 5 are each Impaired Classes and have voted to accept the Plan. There is at least one Class of Claims against the Debtors that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

30. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Projections attached as Exhibit E to the Disclosure Statement, the Stuart Declaration and other evidence proffered or adduced at the Confirmation Hearing regarding feasibility: (a) are persuasive and credible; (b) have not been controverted by other evidence; and (c) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

31. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. As provided in Section 13.3 of the Plan, all fees payable pursuant to section 1930(a) of title 28 of the United States Code have been paid or shall be paid for each quarter on or prior to the Effective Date and the Reorganized Debtors shall continue to pay such fees as they become due from and after the Effective Date

through the closing of these Chapter 11 Cases. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

32. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 1129(a)(13) does not apply in these Chapter 11 Cases because the Debtors are not obligated to pay any retiree benefits.

33. <u>Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. Section 1129(a)(14) does not apply in these Chapter 11 Cases because the Debtors are not required to pay any domestic support obligations.

34. <u>Objection by Holder of Allowed Unsecured Claim to Plan of an Individual (11 U.S.C. § 1129(a)(15))</u>. Section 1129(a)(15) does not apply in these Chapter 11 Cases because none of the Debtors is an individual.

35. <u>Transfers of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16))</u>. Section 1129(a)(16) does not apply in these Chapter 11 Cases because each of the Debtors is a moneyed, business or commercial corporation.

36. <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Based upon the evidence proffered or adduced at the Confirmation Hearing, the Disclosure Statement and all other evidence before the Court, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6, 7 and 8, as required by sections 1129(b)(1) and (2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes, including those of Classes 6, 7 and 8.

(a) <u>The Plan Does Not Unfairly Discriminate Against the Rejecting Classes</u>. The Plan does not unfairly discriminate against Classes 6, 7 and 8. Class 8 (consisting of Claims (if any) that are subordinated pursuant to Section 510(b) of the Bankruptcy Code) contains Claims that are distinct in nature from the Unsecured Claims in Classes that have accepted or are deemed to have accepted the Plan, principally Class 4 (General Unsecured Claims), Class 5 (PBGC Claim), and the deficiency claims of the Noteholders in Class 3. Class 8 Claims (if any) are by definition dissimilarly situated from Claims in Classes 4 and 5, as they would be expressly subordinate to such Claims. As a result, there is a reasonable basis for any disparate treatment between and among Claims in Class 8 and Claims in Classes 4 and 5. Nor does the Plan's treatment of Class 6 and 7 Interests discriminate unfairly. Holders of Interests in Class 6 (Old Preferred Stock) and Class 7 (Old Common Stock) contain all Interests in the Debtors and their estates, and all such Holders receive the same exact treatment under the Plan (*i.e.*, nothing). Accordingly, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code.

(b) <u>The Plan is Fair and Equitable</u>. No Holders of Claims or Interests junior to Claims in Class 8 (Section 510(b) Claims), if any, will receive any distribution under the Plan on account of such junior Claims or Interests.[3] Accordingly, the Plan satisfies the requirements of section 1129(b)(2)(B) and, therefore, is fair and equitable with respect to non-accepting Classes of Claims (*i.e.*, Class 8). Additionally, no Holder of any equity Interest junior to the Interests in Class 6 (Old Preferred Stock) will receive any distribution under the Plan on account of such junior Interests. There are no Interests junior to Class 7 Interests (Old Common Stock) under the Plan and thus no Holder of any equity Interest junior to the Interests in Class 7 will receive any distribution under the Plan on account of such junior Interests. Further, no Class 8

---

[3]     There are no Claims junior to Class 8 Claims under the Plan.

Claims have been filed with the claims agent and the Debtors are not aware of any Claims in Class 8. The Plan therefore satisfies the requirements of section 1129(b)(2)(C) and, thus, is fair and equitable with respect to non-accepting Classes of Interests.

37. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan of reorganization filed in these Chapter 11 Cases. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

38. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

39. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before this Court in these Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.4 of the Plan.

40. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

41. <u>Implementation</u>. All documents and agreements necessary to implement the Plan, including, without limitation, those substantially in the forms contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the New First Lien Notes, the New First Lien Notes Indenture, the New Stockholders' Agreement, the Alpine

Management Agreement, and the New Management Stock Incentive Plan) described in the Plan, have been negotiated in good faith at arm's-length, are in the best interests of the Debtors and the Reorganized Debtors, and shall upon execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

42. <u>Good Faith</u>. The Exculpated Parties will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (b) take the actions authorized and directed by this Confirmation Order.

43. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article IX of the Plan. On May 17, 2011, pursuant to Section 9.1 of the Plan, the Debtors filed with the Court a Rejected Contracts Schedule which provides that no executory contracts and unexpired leases are being rejected pursuant to the Plan [Docket No. 430]. Each assumption of an executory contract or unexpired lease as provided in Article IX of the Plan shall be legal, valid and binding upon the Reorganized Debtors and all non-Debtor parties to such executory contract or unexpired lease to the same extent as if such assumption had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

44. <u>Transfers by Debtors; Vesting of Assets</u>. All transfers of property of the Estates, including, without limitation, the transfer of the New Common Stock and the New First Lien Notes, shall be free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. Pursuant to sections

1141(b) and (c) of the Bankruptcy Code, all Property of each of the Debtors (excluding property that has been abandoned pursuant to the Plan or an order of the Court) shall vest in each of the respective Reorganized Debtors or its successors or assigns, as the case may be, free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

45. <u>Conditions to Confirmation</u>. The conditions to Confirmation set forth in Section 11.1 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

46. <u>Conditions to Consummation</u>. The conditions to the Effective Date are set forth in Section 11.2 of the Plan. Such conditions may be waived by the Debtors without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

47. <u>Retention of Jurisdiction</u>. The Court properly may retain jurisdiction over the matters set forth in Article XII of the Plan.

48. <u>Releases and Discharges</u>. The release, exculpation, injunction and discharge provisions set forth in Article X of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration, are in the best interests of the Debtors, their Estates, and holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of these Chapter 11 Cases in accordance with the Plan.

49. <u>Distribution of Plan Securities</u>. The distributions of the New Common Stock, the New First Lien Notes and any other security issued or that may be deemed to be issued pursuant

to the Plan (collectively, the "Plan Securities") as contemplated by the Plan are exempt from the registration requirements of the Securities Act to the extent set forth in section 1145 of the Bankruptcy Code.

50. Retention and Preservation of Causes of Action. It is in the best interests of the Holders of Claims that all Causes of Action that are not expressly released under the Plan be retained and preserved by the Reorganized Debtors pursuant to Section 4.8 of the Plan to maximize the value of the Debtors' Estates.

51. PBGC Settlement Agreement. Due notice of the PBGC Settlement Agreement and its terms was provided to all parties entitled to notice, and such notice is adequate, appropriate, reasonable and sufficient for all purposes and is approved. The PBGC Settlement Agreement falls above the lowest point in the range of reasonableness, is fair and equitable, and is in the best interests of the Debtors and the Estates.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

52. Confirmation. The Plan, a copy of which, together with the Filed Plan Modifications, is attached hereto as Exhibit A, is approved and confirmed under section 1129 of the Bankruptcy Code. The Plan Supplement is incorporated by reference into and is an integral part of the Plan. The PBGC Settlement Agreement is incorporated by reference into and is an integral part of the Plan.

53. Objections. For the reasons stated on the record of the Confirmation Hearing, the Wust Objection is overruled on the merits. All other objections to the Plan or to Confirmation of the Plan that have not been withdrawn, waived or settled, and all reservations of rights pertaining to Confirmation of the Plan, are overruled on the merits.

54. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan, the Plan Supplement and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

55. <u>Plan Supplement</u>. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery and performance thereof by the Reorganized Debtors, are authorized and approved. Without further order or authorization of this Court, the Debtors, Reorganized Debtors and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are not inconsistent with the Plan, provided, however, no such modifications shall be effective without the prior consent of the Requisite Supporting Noteholders. Once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan (including, without limitation, and as applicable, any and all pledge and security agreements, intellectual property security agreements, deeds of trust, mortgages, guarantees, and subordination agreements) shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

56. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing complied with the terms of the Approval Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. The solicitation of votes on the Plan complied with the solicitation procedures in the Approval Order, was appropriate and satisfactory based upon the

circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. Notice of the Plan Supplement and all related documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

57. <u>Allowance of Note Claims</u>. The Note Claims shall be Allowed in the aggregate principal amount of approximately $131.3 million plus approximately $6.4 million of accrued and unpaid Cash interest through September 30, 2010 plus any thereafter accrued and unpaid Cash and paid-in-kind interest for the period up to and including the Petition Date.

58. <u>Plan Classifications Controlling</u>. The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; and (c) shall not be binding on the Debtors or the Reorganized Debtors.

59. <u>Issuance of New Securities</u>. The issuance by Reorganized WTI of the Plan Securities is authorized without the need for any further corporate action and without any further action by Holders of Claims or Interests. No entity entitled to receive a distribution of New Common Stock under the Plan, other than PBGC, shall be permitted to transfer such New Common Stock, and the transfer agent shall not recognize any such purported transfer, until such time as such entity (or its designated affiliate) shall have executed and delivered to the Reorganized Debtors a signature page to the New Stockholders' Agreement.

60. <u>New Stockholders' Agreement</u>. Section 4.4 of the Plan is hereby deemed modified to provide as follows:

> "The holders of the New Common Stock shall be party to the New Stockholders' Agreement, the terms of which shall be reasonably acceptable to the Debtors, the Requisite Supporting Noteholders and PBGC and which shall be included in the Plan Supplement. The New Stockholders' Agreement shall be binding on all holders of New Common Stock and shall include, as may be agreed upon between the Debtors and the Requisite Supporting Noteholders, (i) tag-along rights that allow holders of New Common Stock to participate in any sale transaction that results in a majority of the New Common Stock being held by a single stockholder or group of stockholders (other than, in each case, the stockholders on the Effective Date and their affiliates), (ii) drag-along rights for any sale of the Debtors or the Reorganized Debtors, as applicable, that is approved by the board of directors and the holders of a majority of the New Common Stock, provided that any purchaser in a drag-along sale must acquire 100% of the New Common Stock held by Plainfield and if the board of directors' approval of the drag-along sale is not unanimous, there shall be delivered a fairness opinion from a nationally recognized investment bank as to the fairness to the stockholders of the transaction from a financial point of view, (iii) preemptive rights for holders of New Common Stock who are accredited investors (and not competitors of the business), (iv) piggyback registration rights, (v) demand registration rights that can be exercised by holders of New Common Stock that meet minimum ownership requirements six months after an initial public offering or after 3 years after the Effective Date, (vi) restrictions on transfers to competitors by stockholders, (vii) information rights for holders of New Common Stock (other than competitors or management shareholders who are no longer employed), (viii) inspection rights for holders of New Common Stock (other than competitors of the business) that meet minimum ownership requirements, and (ix) a requirement that transactions with affiliates be approved by a majority of disinterested directors."

61. <u>Cancellation and Surrender of Existing Securities and Agreements</u>.

(a) Upon the occurrence of the Effective Date, except as may otherwise be provided in this Confirmation Order or the Plan, on the date distributions are made, the promissory notes, share certificates, bonds and other Instruments evidencing any Claim or Interest shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors (and, as applicable, any non-Debtor subsidiaries and affiliates of the Debtors) under the agreements, indentures and

certificates of designations governing such Claims and Interests, as the case may be, shall be discharged and released.

(b)     Except as otherwise provided in the Plan or agreed by Reorganized WTI, each holder of a promissory note, share certificate, bond or other Instrument evidencing a Claim shall surrender such promissory note, share certificate, bond or Instrument to Reorganized WTI (or the Disbursing Agent). No distribution of Property under the Plan shall be made to or on behalf of any such holders unless and until such promissory note, share certificate, bond or Instrument is received by Reorganized WTI (or the Disbursing Agent), or the unavailability of such promissory note, share certificate, bond or Instrument is established to the reasonable satisfaction of Reorganized WTI (or the Disbursing Agent), or such requirement is waived by Reorganized WTI. Reorganized WTI may require any holder that is unable to surrender or cause to be surrendered any such promissory notes, share certificates, bonds or Instruments to deliver an affidavit of loss and indemnity reasonably satisfactory to Reorganized WTI. Any holder that fails within the later of six months after the Effective Date and the date of allowance of its Claim (i) to surrender or cause to be surrendered such promissory note, share certificate, bond or Instrument and (ii) if requested, to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to Reorganized WTI (or the Disbursing Agent), shall be deemed to have forfeited all rights, Claims and Causes of Action against the Debtors and Reorganized Debtors and shall not participate in any distribution under the Plan; provided, however, any Holder of a Note for which no physical certificate was issued to the Holder but which instead is held in book-entry form pursuant to a global security held by DTC or other securities depositary or custodian thereof shall be deemed to have surrendered its Note upon the surrender of such global security by DTC or such other securities depository or custodian thereof.

62.  Revesting of Assets and Operation of Businesses.  Except as otherwise set forth in the Plan or this Confirmation Order, as of the Effective Date, all Property of the respective Debtors' Estates shall revest in the respective Reorganized Debtors free and clear of all Claims, Liens, encumbrances and other Interests of the Holders of Claims or Interests.  Subsidiary Equity Interests shall be retained, and the legal, equitable and contractual rights to which the Holders of such Allowed Subsidiary Equity Interests are entitled shall remain unaltered.

63.  Retention of Causes of Action.  Except as otherwise provided in the Plan, this Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases:  (1) any and all rights, Claims, Causes of Action, defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in the Reorganized Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, Causes of Action, defenses, and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Court, and (2) neither the Debtors nor the Reorganized Debtors waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes Property of the Estates:  (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Court, (b) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense, or counterclaim filed a Proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any

otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that the Debtors or the Reorganized Debtors has, or may have, as of the Confirmation Date. The Reorganized Debtors may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors.

64. <u>Waiver of Avoidance Actions</u>. Notwithstanding anything to the contrary contained in the Plan or this Order, as of and subject to the occurrence of the Effective Date, the Debtors and the Reorganized Debtors, for and on behalf of themselves and their Estates, hereby waive and release any of the Causes of Action under sections 510, 542, 544, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code; <u>provided, however</u>, that the foregoing waiver and release shall not apply to any such Causes of Action that are pending on the Effective Date.

65. <u>Satisfaction of Claims or Interests</u>. Unless otherwise provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims shall be in full and final satisfaction, release, settlement and discharge of such Allowed Claims.

66. <u>Continuation of Bankruptcy Injunction or Stays</u>. All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and

in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

67.   <u>Administration Pending Effective Date</u>.  Prior to the Effective Date, the Debtors shall continue to operate their businesses as debtors-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  After the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the continuing jurisdiction of the Court as set forth in Article XII of the Plan.

68.   <u>Exemption From Securities Laws</u>.  The issuance of the Plan Securities shall be exempt from any federal, state or local laws requiring registration for the offer and sale of such securities or registration or licensing of an issuer of, underwriters of, or broker or dealer in, such securities, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

69.   <u>"Change of Control" Provisions</u>.  Notwithstanding anything to the contrary contained in the Plan, the Note Indenture, or any executory contract to which any of the Debtors is a party, the transactions to be consummated in accordance with the Plan shall not create, or be deemed to create, (a) any right on the part of a Noteholder to require that any of the Debtors or the Reorganized Debtors repurchase such Holder's Note or (b) any other claim in connection therewith, upon a "Change of Control," as such term may be defined in the Note Indenture or in any executory contract being assumed pursuant to the Plan.

70.   <u>Substantive Consolidation of the Debtors for Voting and Distribution Purposes Only</u>.  On and after the Effective Date, except for Other Secured Claims in Class 2, and solely for purposes of voting on, and making distributions under, the Plan, each and every Claim in the Debtors' Chapter 11 Cases against any of the Debtors shall be deemed filed against the

consolidated Debtors, and shall be deemed a single consolidated Claim against and obligation of the consolidated Debtors. Such limited consolidation shall in no manner affect or alter (other than for Plan voting and distribution purposes) (i) the legal and corporate structures of the Reorganized Debtors, or (ii) pre- and post-Petition Date Liens, guarantees and security interests that are required to be maintained (x) in connection with contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed pursuant to section 365 of the Bankruptcy Code and/or the Plan, (y) in connection with the terms of the New First Lien Notes, and (z) pursuant to the terms and conditions contained in the Plan. From and after the Effective Date, each of the Reorganized Debtors will be deemed a separate and distinct entity, properly capitalized, vested with all of the assets of such Debtor as they existed prior to the Effective Date and having the liabilities and obligations provided for under the Plan. Notwithstanding anything in Section 4.17 of the Plan to the contrary, all post-Effective Date fees payable to the United States Trustee pursuant to 28 U.S.C. §1930, if any, shall be calculated on a separate legal entity basis for each Debtor.

71.    <u>Corporate Existence</u>. Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to its certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further

action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

72.    <u>Management of Reorganized Debtors</u>.  On the Effective Date, the management, control and operation of the Reorganized Debtors shall become the general responsibility of the board of directors of Reorganized WTI, which shall, thereafter, have responsibility for the management, control and operation of Reorganized WTI and its direct and indirect subsidiaries in accordance with applicable law.

73.    <u>New Management Stock Incentive Plan</u>.  The entry of this Confirmation Order constitutes authorization and approval of the New Management Stock Incentive Plan, which shall be effective immediately on the Effective Date and shall be deemed to replace and supersede all prior stock incentive plans (or components of other incentive plans governing stock incentives, but not any other components of such incentive plans) of WTI in effect on and as of the Effective Date.

74.    <u>Board of Directors of Reorganized Debtors</u>.  Upon the occurrence of the Effective Date, the Persons proposed to serve as members of the board of directors of Reorganized WTI, shall automatically constitute the board of directors of Reorganized WTI.  As provided by Section 5.4 of the Plan, the board of directors of each Reorganized Debtor (other than Reorganized WTI) shall be identified and selected by the board of directors of Reorganized WTI and consist of some or all of the members of the board of directors of Reorganized WTI.

75.    <u>Officers of Reorganized Debtors</u>.  On the Effective Date, the officers of the respective Debtors immediately prior to the Effective Date shall serve as the officers of the Reorganized Debtors.  After the Effective Date, the officers of the Reorganized Debtors shall be determined by the board of directors of the Reorganized Debtors.

76.     Corporate Action.

(a)     Upon the occurrence of the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated by the Plan with respect to each of the Reorganized Debtors shall be deemed authorized and approved in all respects.  Without limiting the foregoing, such actions may include:  (i) the adoption of new certificates of incorporation and by-laws and related documents; (ii) the election or appointment, as the case may be, of directors and officers for the Reorganized Debtors; (iii) the issuance of the Plan Securities; (iv) the adoption, authorization, and implementation of the New Management Stock Incentive Plan; (v) the execution and delivery of the New Stockholders' Agreement; (vi) the execution and delivery of the Alpine Management Agreement; (vii) the execution and delivery of the PBGC Settlement Agreement; and (viii) the execution and delivery of the New First Lien Notes and the New First Lien Notes Indenture (including, without limitation, any and all pledge and security agreements, intellectual property security agreements, deeds of trust, mortgages, guarantees, and subordination agreements) and the performance of all obligations thereunder.

(b)     All matters provided for in the Plan involving the corporate structure of any Debtor or any Reorganized Debtor, or any corporate action required by any Debtor or any Reorganized Debtor in connection with the Plan, is deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of such Debtor or Reorganized Debtor or by any other stakeholder.

(c)     On or after the Effective Date, the appropriate officers of each Reorganized Debtor and the members of the board of directors of each Reorganized Debtor are authorized and directed to issue, execute, deliver, file and record any and all agreements,

documents, securities and instruments contemplated by the Plan or the transactions contemplated thereby in the name of and on behalf of such Reorganized Debtor and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated thereby. Without limiting the generality of the foregoing, each of the appropriate officers of each Reorganized Debtor is authorized to issue, execute, deliver, file and record any and all documents and instruments as any such officer may deem necessary or appropriate to (i) terminate any Uniform Commercial Code financing statement, filing in the United States Patent and Trademark Office or mortgage or deed of trust relating to Liens granted in connection with the Note Indenture or (ii) perfect or preserve any of the Liens created under the New First Lien Notes Indenture.

77. <u>Distributions Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VII of the Plan.

78. <u>Unclaimed Distributions</u>. Pursuant to Section 7.5.4 of the Plan, all distributions under the Plan that remain unclaimed on the six month anniversary of the Effective Date shall revert to the Reorganized Debtors and the Claim of any Holder to such property or interest in property shall be discharged and forever barred, notwithstanding any federal or state escheat laws or regulations to the contrary.

79. <u>Disputed Claims</u>. The provisions of Article VIII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

80. <u>Assumption of Executory Contracts and Unexpired Leases</u>. On the Effective Date, except as otherwise provided in the Plan, this Confirmation Order, or any other order of the Court, all of the Debtors' executory contracts and unexpired leases will be deemed assumed in

accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption or applicable federal law.

81. <u>Cure of Defaults of Assumed Contracts and Unexpired Leases</u>.

(a)    Except as otherwise specifically provided in the Plan, any monetary defaults under each executory contract and unexpired lease assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding: (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; <u>provided</u>, <u>however</u>, that based on the Court's resolution of any such dispute, the applicable Debtor or Reorganized Debtor shall have the right, within 30 days after the entry of such Final Order and subject to approval of the Court pursuant to section 365 of the Bankruptcy Code, to reject the applicable executory contract or unexpired lease.

(b)    Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults,

whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court; provided, however, that with respect to policies issued by or related agreements with affiliates of Chartis, Inc. ("Chartis"), assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not require any cure of any default, and Chartis shall receive no distribution on account of any Proof of Claim on the Effective Date. All other rights of Chartis and each of the Debtors pursuant to section 365 of the Bankruptcy Code are preserved and not prejudiced. Any Proofs of Claim filed with respect to any Chartis executory contract or unexpired lease that has been assumed shall be deemed satisfied by this assumption, and there shall be no distribution pursuant to the Plan upon the Effective Date. The claims register shall be modified to reflect this treatment.

82. **Assumption of Alpine Agreements.** This Confirmation Order shall constitute an order approving the assumption of the Alpine Agreements, including the Alpine Management Agreement, as amended and restated and in substantially the form included in the Plan Supplement, in accordance with Section 9.3 of the Plan, effective upon the Effective Date.

83. **Assumption of Compensation and Benefit Plans.** This Confirmation Order shall constitute an order approving the assumption of the employment agreements, retirement income and welfare benefit plans, and incentive and bonus plans set forth on the schedule included in the Plan Supplement, in accordance with Section 9.4 of the Plan, effective upon the Effective Date.

84.    Pass-Through.  Any rights or arrangements necessary or useful to the operation of the Debtors' business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for the Debtors and the Debtors' counterparty's benefit, unaltered and unaffected by the bankruptcy filings or the Chapter 11 Cases.

85.    Survival of Indemnification and Corporation Contribution.  The obligations of the Debtors, if any, to indemnify and/or provide contribution to its current and former directors, officers, employees, managing agents, and attorneys, and such current and former directors' and officers' respective affiliates, pursuant to the Corporate Documents and/or any employment contracts, applicable statutes or other contractual obligations, in respect of all past, present and future actions, suits and proceedings against any of such directors, officers, employees, managing agents, and attorneys, based on any act or omission related to the service with, for or on behalf of the Debtors, will be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.   Accordingly, such indemnification and contribution obligations will not be discharged, but will instead survive and be unaffected by entry of this Confirmation Order.

86.    Insurance Policies.  Each of the Debtors' insurance policies and any agreements, documents, or Instruments relating thereto, are treated as executory contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and Instruments relating to coverage of all insured Claims.

87. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>.

(a)     Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

(b)     Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

88.     <u>Reservation of Rights</u>.   Nothing contained in the Plan shall constitute an admission by the Debtors that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

89.     <u>Nonoccurrence of Effective Date</u>.   In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

90. <u>Contracts and Leases Entered Into After the Petition Date</u>. Contracts and leases entered into after the Petition Date by any Debtor, including any executory contracts and unexpired leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) will survive and remain unaffected by entry of this Confirmation Order.

91. <u>Releases by the Debtors</u>. Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the "Releases by the Debtors" set forth in Section 10.1 of the Plan are hereby approved.

92. <u>Releases by Holders of Claims</u>. To the greatest extent permissible by law and except as otherwise provided in Section 10.2 of the Plan, as of the Effective Date, the "Releases by Holders of Claims" set forth in Section 10.2 of the Plan are hereby approved.

93. <u>Mutual Releases by Released Parties</u>. As of the Effective Date, the "Mutual Releases by Released Parties" set forth in Section 10.3 of the Plan are hereby approved.

94. <u>Exculpation</u>. The exculpations set forth in Section 10.4 of the Plan are hereby approved.

95. <u>Injunction</u>. Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims, Causes of Action or Interests that have been released pursuant to Section 10.1 or Section 10.2 of the Plan, discharged pursuant to Section 10.6 of the Plan, or are subject to exculpation pursuant to Section 10.4 of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or

other proceeding of any kind on account of or in connection with or with respect to any such Claims, Causes of Action or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Causes of Action or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims, Causes of Action or Interests; (4) asserting any right of subrogation or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Causes of Action or Interests; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Causes of Action or Interests released or settled pursuant to the Plan.

96. Discharge of Claims and Termination of Interests. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, Instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any Property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of

Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; provided, however, that, upon the Effective Date, all Allowed General Unsecured Claims shall be Reinstated and shall not be subject to the discharge provisions hereof. Any default by the Debtors or their affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. The discharge provisions hereof also shall apply to any and all Claims against non-Debtor subsidiaries and affiliates of the Debtors on account of or relating to the Notes.

97. <u>Discharge and Release: Environmental Laws</u>. Nothing in this Confirmation Order or the Plan discharges, releases, or precludes any claims or causes of action of a governmental unit under U.S. (federal and/or state) environmental law, or divests any court, commission, or tribunal of jurisdiction over any liabilities asserted by a governmental unit under U.S. (federal and/or state) environmental law, including jurisdiction to determine whether such liabilities are barred by this Confirmation Order, the Plan, or the Bankruptcy Code. Further, nothing in this Confirmation Order or the Plan enjoins governmental units from pursuing police and regulatory actions or proceedings under U.S. (federal and/or state) environmental law with respect to any person or entity in the manner, and by the administrative or judicial tribunals, in which the governmental units could have pursued such actions or proceedings if the Chapter 11 Cases had never been commenced.

98.     No Releases of Claims By Debtors Against Non-Debtor Subsidiaries or Joint Ventures.  Notwithstanding anything to the contrary contained in the Plan (including, without limitation, anything to the contrary contained in Sections 10.1, 10.2, 10.3, 10.4, 10.5 or 10.6 of the Plan), nothing in the Plan or this Confirmation Order shall (or shall be deemed to) constitute a waiver, release or discharge by the Debtors or Reorganized Debtors of any Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, against or relating to any non-Debtor subsidiaries or Joint Ventures.

99.     Releases Respecting Claims and Obligations Relating to Pension Plan. Notwithstanding anything to the contrary contained in the Plan (including, without limitation, anything to the contrary contained in Sections 10.1, 10.2, 10.3, 10.4, 10.5 and 10.6 of the Plan) or this Confirmation Order, and for the sake of clarity, releases and any other limitations respecting the PBGC Claim and/or the liability or obligations of the Debtors or the Reorganized Debtors to PBGC (on its own behalf, and in every other capacity in which it may now or in the future act) relating to the Pension Plan, and the extent and scope of such releases and other limitations, shall be governed by the terms of the PBGC Settlement Agreement.

100.     Retention of Jurisdiction.  In accordance with Article XII of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction (except with respect to the purposes described under Sections 12.1 (a) and (n) of the Plan, with respect to which jurisdiction shall not be exclusive) over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law.

101.    Approval of PBGC Settlement Agreement.  Pursuant to Bankruptcy Rule 9019, the PBGC Settlement Agreement, a true and correct copy of which is included in the Plan Supplement, is hereby approved in its entirety.  The Debtors and PBGC are authorized to take any and all actions and to enter into, execute and deliver any and all additional documents necessary and appropriate to perform under, consummate, implement and effectuate the PBGC Settlement Agreement.  On the Effective Date, the PBGC Settlement Agreement (including, without limitation, the releases granted thereunder) shall be binding upon and inure to the benefit of the parties thereto, and the adversary proceeding complaint filed by PBGC [Docket No. 307 and Adv. Pro. No. 11-51201] and PBGC's motion to correct the final Cash Collateral Order [Docket No. 306] shall be deemed withdrawn and/or dismissed with prejudice.

102.    Immediate Binding Effect.    Subject to Section 11.2 of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring Property under the Plan, and any and all parties to executory contracts and unexpired leases with the Debtors.

103.    Effectuating Documents; Further Transactions.  The Debtors or the Reorganized Debtors (as the case may be) are authorized to execute, deliver, file, or record such contracts, Instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of

the Plan. The secretary or any assistant secretary of the Debtors or the Reorganized Debtors is authorized to certify or attest to any of the foregoing actions.

104. <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

105. <u>Exemption From Certain Transfer Taxes</u>. Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtors to the Reorganized Debtors or any other Person or Entity pursuant to or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing Instruments or other documents without the payment of any such tax or governmental assessment.

106. <u>Effectiveness of All Actions</u>. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors or stockholders.

107. <u>Approval of Consents</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any

documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any related documents, instruments or agreements, and any amendments or modifications thereto.

108.   Post-Confirmation Date Fees and Expenses.   Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors. Upon the Confirmation Date, any requirement that Professional Persons comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Court.

109.   Fees and Expenses of Note Trustee and the Supporting Noteholders.   On the Effective Date or as soon as reasonably practicable after the Effective Date, as specified in this paragraph, consistent with subsections 3.6(e) and (g) of the Plan, all unpaid reasonable fees and expenses of the professionals retained by the Note Trustee, the Ad Hoc Group and Plainfield, including lead and local counsel to the Note Trustee, the Ad Hoc Group and Plainfield, in accordance with the terms of the Cash Collateral Order, shall be paid in full in Cash as Administrative Expense Claims of the Debtors' Estates by the Reorganized Debtors. Invoices for such reasonable fees and expenses delivered at least ten (10) days prior to the Effective Date, shall be paid on or prior to the Effective Date. Invoices for such reasonable fees and expenses

incurred prior to the Effective Date delivered within ten (10) days prior to the Effective Date or after the Effective Date, shall be paid as soon as reasonably practicable after the Effective Date. The Note Trustee, the Ad Hoc Group and Plainfield shall also be entitled to assert, and the Debtors and the Reorganized Debtors shall be authorized and directed to pay, claims for reasonable fees, costs and expenses in connection with the consummation of the Plan (including, without limitation, fees, costs and expenses incurred in connection with the release of liens and security on property of the Debtors) after the Effective Date.

110. <u>Disclosure: Agreements and Other Documents</u>. The Debtors have disclosed all material facts regarding: (a) new certificates of incorporation and by-laws or similar constituent documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the distribution of Cash; (d) the New Common Stock; (e) the New First Lien Notes and the New First Lien Notes Indenture; (f) the New Stockholders' Agreement; (g) the New Management Stock Incentive Plan; (h) the Alpine Management Agreement; (i) the PBGC Settlement Agreement; (j) the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors; and (k) all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing.

111. <u>Administrative Expense Claims Bar Date</u>. All requests for payment of an Administrative Expense Claim (other than those of Professional Persons and those arising out of section 503(b)(9) of the Bankruptcy Code) must be filed with the Debtors' claims agent, Donlin, Recano and Company, Inc., and served on (i) counsel for the Debtors, (ii) special corporate and tax counsel for the Debtors, (iii) counsel for the Ad Hoc Group, and (iv) counsel for Plainfield no later than forty-five (45) days after the Effective Date (the "<u>Administrative Expense Claims Bar Date</u>"). Any request for payment of an Administrative Expense Claim pursuant to this paragraph

that is not timely filed and served shall be disallowed automatically without need for any objection by the Debtors or the Reorganized Debtors. The Debtors or the Reorganized Debtors may settle an Administrative Expense Claim without further Court approval. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim which is paid or payable in the ordinary course of business.

112. <u>Final Fee Applications; Bar Date for Professional Persons</u>. All final requests for payment of Professional Fee Claims, including the Holdback Amount and Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date, must be filed with the Court and served on (i) counsel for the Debtors and (ii) special corporate and tax counsel for the Debtors no later than thirty (30) days after the Confirmation Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any applicable orders of the Court, the Allowed amounts of such Professional Fee Claims shall be determined and paid as directed by the Court. Applications that are not timely filed will not be considered by the Court.

113. <u>Binding Effect</u>. The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, and all other parties-in-interest in the Chapter 11 Cases.

114. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements,

documents, Instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation of the relevant Debtor or Reorganized Debtor, as applicable.

115. Notice of Entry of Confirmation Order and Effective Date. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Reorganized Debtors shall file and serve notice of entry of this Confirmation Order and occurrence of the Effective Date (the "Notice of Confirmation") on all holders of Claims and Interests, the United States Trustee for the District of Delaware and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by first-class mail, postage prepaid, within ten business days after the Effective Date. The Notice of Confirmation shall also be published in *The Wall Street Journal* and posted on the Debtors' restructuring website at http://www.donlinrecano.com/wti. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The Notice of Confirmation also shall serve as the notice of the Administrative Expense Claims Bar Date and as the notice of the Effective Date.

116. Substantial Consummation. Upon the occurrence of the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

117. References to Plan Provisions. The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.

118. <u>Findings of Fact</u>. The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

119. <u>Conflicts Between Confirmation Order and Plan</u>. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided, however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

120. <u>Separate Confirmation Orders</u>. This Confirmation Order is and shall be deemed to be a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case. The Clerk of Court is directed to file and docket this Confirmation Order in each Debtor's Chapter 11 Case.

121.  <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an

appeal must be filed shall commence upon the entry hereof.

Dated: June _10_, 2011
        Wilmington, Delaware

By: _____
    HONORABLE PETER J. WALSH
    UNITED STATES BANKRUPTCY JUDGE